Joseph Camden, Federal Defenders of San Diego, on behalf of the opponent, Ms. Eyraud. Counsel, I have to keep your voice. You have a soft voice. Please keep it up. Yes, Your Honor. There are two issues in this case which require a remand. The first is the imposition of about $173,000 of attorney's fees based on an erroneous interpretation of the legal standard. The second is the imposition of tax penalties and interest restitution for that in the amount of $128,000. Also based on an erroneous- Mr. Camden- Yes, Your Honor. Excuse me. I don't understand your issue, your first issue. In your opening brief, you say, was the district court wrong to conclude that the attorney's fees were reasonably necessary? That suggests to me that the district court concluded that the fees were reasonably necessary, but that he was wrong. And then you repeat that a few pages later. First, the district court erred in concluding. So that assumes that the district court concluded that the fees were reasonably necessary. But when you get to your reply brief, all of a sudden the district court not only did not apply that test, but was ignorant of it. So what's your issue? That he was wrong in concluding that they were reasonably necessary or that he didn't even apply the test because he was ignorant of it? Your Honor, I think my opening brief may have been just inartfully phrased. So the relevant part of the record is pages 15 to 17. That's where the district court- What do you mean inartfully phrased? I mean, you say he erred in concluding the attorney's fees were reasonably necessary. Doesn't that suggest to us that he did so conclude? That sounds that- yes, it does, Your Honor. Well, then at the end of your reply brief, all of a sudden he's ignorant of the test. Tell me how that works. What is your issue? The first one or the second one? The second one, Your Honor. So the district judge correctly identified- So you ignored the real issue in your opening brief and waited until the reply brief? Or did you change your mind? Your Honor, I'd like to take a look and go back at that. But on review of the record, my position now, and I believed it was my position from the beginning but I could be wrong, was that the district court didn't identify the correct legal standard. Well, how could that be? Because I look at the record, and I'm referring now specifically to ER 16, and the judge says there's a case that covers that, United States v. Wachneney. And then he refers to the Gordon case, and he goes down and he discusses that case. But then on the next page he said the Ninth Circuit held that the district court reasonably concluded that Cisco's investigation costs, including attorney's fees, were necessarily incurred. So there's reasonably necessary right there. You, on two different occasions, told him that that was the test, part of the test, that they had to be reasonably necessary. You cited the Wachneney case, and here's the judge himself using that language. So how can he be ignorant of it? Well, Your Honor, he did cite the facts from Wachneney, I believe. And, in fact, Gordon, I believe he discussed also where the attorneys for Cisco  But how can he be ignorant of the test if he's citing it here and referring to Wachneney? Wachneney himself, as you well know, in the very final sentence almost, says that the judge on remand has to decide whether the fees were reasonably necessary. How can he be ignorant of the test? Because immediately after that, you would expect after the judge announces a legal standard, that the judge would then proceed to apply the facts of the case or analyze the facts of the case under that legal standard. Well, here's what he did. Here's what he did. Excuse me. Here, after saying reasonably necessary and citing Wachneney, he says here RBS has now provided sufficiently detailed supporting documentation to support their request. Coming in the shadow of reasonably necessary, isn't it fair to assume that he's applying that test? And then he says, and it reasonably appears that the charges were incurred as a direct and foreseeable result of Irode's fraud. So it seems to me that he's not only aware of the test, but he's applying it. He's going from the first part, reasonably necessary, to the second part, causation. What am I missing? Your Honor, there's a couple problems. First, I don't know whether the judge was actually analyzing whether the fees that were claimed were reasonably necessary to aid in the prosecution and litigation of the case because I still have... He says Wachneney, and I hate to interrupt you, but later on when he gets to the very end and asks you if you have any problems with all of this, you don't mention, judge, you didn't apply the reasonably necessary test. All you talk about is causation and the other issues, but you don't make an... Where did you make an objection, judge, you didn't apply the reasonably necessary test? Well, Your Honor, I did cite it in my briefing. I made all the arguments there. It's not in your colloquy with the judge. There was an objection at the end of the sentence after it was imposed based on the... Based on the papers, but you never pointed out that, uh-oh, you haven't applied the reasonably necessary test. I'm not sure what... So, I mean, I guess the issue would be, no, I did not interrupt the judge during his colloquy or even at the end of the colloquy. He kept asking you if you had anything else, and all you talked about were the other issues. I believe I did say that I stand on the objections and the issues that I'd raised in my briefing papers, and the briefing papers did cite... So were you aware at the time that he hadn't applied the reasonably necessary test? Thinking back, Your Honor, this was a while ago. At the time, I was actually kind of taken aback by the Lodestar analysis. That came out of nowhere, and I was... Well, the Lodestar analysis was simply the next step. Okay, they're reasonably necessary. It was incurred as a direct foreseeable result. Now let's see whether the fees themselves were necessary. Do you say he shouldn't have gone to that third step? I don't know, Your Honor. No, we're not objecting to the application of the Lodestar analysis to reduce the fees after there's a determination that they're reasonably necessary. Well, it seems to me that that's what he did. If I'm wrong, maybe we'll find out. But go ahead. Understood, Your Honor. The other issue with the attorney's fees, though, is that I wasn't, and Ms. Erod, wasn't given a chance to participate in that analysis of whether they were, in fact, reasonably necessary because the judge considered and relied on information that was submitted ex parte. Well, on that issue, you rely on the statute. Is that right? Well, three issues. We rely on the constitutional due process. We rely on the MVRA and the procedure. Well, first you rely on 3664A and B and all the rest of that. Is that right, where it says the government shall disclose? Yes, Your Honor. But that's the probation report. That is the probation report. Correct. You ignore completely 3664D4 that says after reviewing the report of the probation officer, the court may require additional documentation. The privacy of any records filed or testimony heard pursuant to this section shall be maintained to the greatest extent possible, and such records may be filed or testimony heard in camera. I don't see how you can rely on the statute because the statute, the first part, A and B, talks about probation report. How do you rely on that part of the statute? The procedure under the MVRA is first a restitution request by the victim goes through the probation officer and is included in the precinct report. But that's not what happened here because the government wasn't even supporting the request. Correct. The government was bound by the police, so the victim was left entirely to the victim's own devices and submitted a report. It seems to me that's exactly what's contemplated under 3664D4. So the statute talking about probation reports doesn't even apply, does it? I think it should have if the proper procedure of the victim had been informed. What's the language that says that it should have? It talks about probation reports. Yes, Your Honor, and before that, though, the statute says the victim or the probation officer is supposed to contact the victims, include their comments or their requests for restitution in the probation report. But that's not what we're dealing with. We're dealing with 4. How do you deal with 4? It says after reviewing the report, additional information can be sought, and it can be done in camera. How do you deal with that here? Well, Your Honor, due process is really the base of the claim here we're making. That Wolfson is the case. So are you abandoning the statute and claiming just general due process? No, Your Honor. I stand on the arguments I made regarding the statute. But due process is certainly a standard that doesn't purely rely on the statute. So due process – What's your best case on your constitutional due process issue? Wolfson, Your Honor, where this Court held in 1980 that not only is it a gross breach of the appearance of justice when the defendant's principal adversary is given private access to the ear of the court, it is a dangerous procedure. So you're saying the statute is unconstitutional by allowing it to be done with privacy in chambers? Well, Your Honor, it does say in chambers. It does not say necessarily ex parte. And even if it is ex parte, it would depend on the type of information that's being sought. So, for example, even ordinary probation reports, the probation officer can make a recommendation to the court that is ex parte. But here we have ex parte facts that are being presented. So are you saying that this is unconstitutional as applied in this case? Yes, Your Honor. To the extent that if the Court believes that it allows in-camera review of information that goes to a legal standard that makes its way into the judgment and that the defendant doesn't have an opportunity to examine that, if that's what the statute means, then, yes, it's unconstitutional under the due process clause. Judge Breybe, I believe you had a question. Yeah. I do see I'm under – I only have 30 seconds left. I'd like to reserve if possible, but I'm happy to answer. Well, I think you will be better served by answering the questions from the bench. I'll do that, Your Honor. Go ahead. So I have a question, and I will also ask the government the same question. I'm a little bit confused about the award of attorney's fees. On page 16 of the ERs, the judge totals up the attorney's invoices and says they total $71,265 for a combined total of grand jury and restitution billing of 106,427. But the order is for 173. What am I missing? Where did we come up with the 173 figure? It looks to me like the judge did two different calculations of the attorney's fees, one where he adds them, and that comes up to 106, and one where he subtracts 53,000 from the total bill of whatever it was, 225 or 226, to come up with 173. So one he's adding, one he's subtracting, but the numbers don't add up. What am I missing here? You're missing exactly what I'm missing, Your Honor. I did raise that issue, I believe, in my brief. I calculated it. I mean, that's a difference of $67,000. That's not likely to have just wandered off. Well, I calculated it at 85. I assume my time is up. But I did calculate it slightly differently. But, yes, the amount the district court added up did not correspond to the amount that he subtracted from the 226 total that they had requested. Okay. Counsel, I'll allow you one minute of rebuttal. Our questions took you way over time, so you will – I will allow a rebuttal  Thank you, Your Honor. We'll hear from the government. Thank you. May it please the Court, Melanie Pearson appearing on behalf of the United States. The Mandatory Victim Restitution Act has one purpose and one purpose alone. Yeah, we understand that. But why don't you go to the math so we don't waste time hearing about the statute. Absolutely. The way the court calculated it was he looked at all of the billings that had been submitted. And those are actually exhibits that were given to the defense. And they totaled up to $226,000. And as he went over it in court, he started giving specific invoice numbers. He did not cover every invoice when he went through them. He started going invoice by invoice. And at the end, he sort of abandoned that and said, I'm finding all of this to be related to the criminal case. Where did he say that? Just so I can – On ER 17, line 9. I believe that's the case. Because he did say, I'm not going to go through each one of these because he was going to have his clerk write up a written order, and that didn't happen. So what he did say is, I find that all of these fees are reasonably necessary to the prosecution and investigation of the case. But then he found that there were – So how many more invoices were there? Is it just that he hasn't totaled up 1 through 10, or is there something after 22? No, he just hasn't – he hadn't totaled up the first ones. He didn't discuss the earlier invoices there. But he did indicate that as a whole, it was all related. But then he said that he found that it could have – appears that the task of determining the restitution could have been accomplished more quickly and with fewer high-paid attorneys. And that's at excerpts of the record, page 23. And so at that point, he said – Counsel, if I can interrupt you for one second on ER 26. Mr. Camden said, just first, I think, to clear up the math, that RBS was requesting, I think, a total of 226. The court said, and the court says, right. And then Mr. Camden says for attorneys' fees, and then that was reduced. So even Mr. Camden understood the request for 226,995.32. That's correct. So everyone was on the same page in terms of we are talking about the $226,995 that were submitted in the public record by the victim. And he approved the whole thing, reduced it by 50-something, and so that accounts for the missing 85, which isn't missing at all. That's correct. That's how the math was done in this case by the district court. So if the court has additional questions, I would like to address your questions rather than just speak to save time. Well, do you think the court didn't understand the test? No, I think the court clearly understood the test. The court set on the record, cited the appropriate cases, and talked about what was reasonable and what was necessary in the case. This was not a case where the court sort of wildly went through this in a fast and quick fashion. We had six separate hearings before the district court to discuss the issue of restitution. After each hearing, there was additional briefing discussing additional subjects and what have you. This court spent a huge amount of time on this issue and thoughtfully considered all the evidence in front of it and found that the amount that it had finally awarded the victim was what was reasonable, necessary, and a direct and foreseeable result of the defendant's conduct. Because the district court found that, in fact, the defendant's conduct nearly brought the company to its knees. Anything further, counsel? Unless the court has questions, I submit. Judge Trott, that's it. Okay. Thank you, counsel. Mr. Camden, you have an additional one minute. The first 30 seconds, Your Honor. Under 3664, and this goes back to the issue Judge Trott was discussing, Section A does say that the report of the probation officer shall include, to the extent practical, a complete accounting of the losses of each victim, any restitution owed, and information relating to the economic circumstances. And it says that that goes in a separate report, information sufficient for the court to exercise its jurisdiction in fashioning a restitution order. And that report is supposed to be disclosed, and it allows the court to consider in Section 4. Yeah, but that wasn't the report you're talking about in this case because the victim was left to the victim's own devices, and so the victim submitted documentation under 4. The proper procedure is for the victim to provide that information to the probation officer. The probation officer is not bound by the plea agreement. What good is that going to do here where the government is saying, we're bound by the plea agreement? That's not the proper procedure. 4 says there's another way to do it. And if you look at the Gamatek case, in that case the government was even arguing that they weren't entitled to any restitution at all, and Judge Kaczynski at the very end of the case says 3664D authorizes the district court to allow the victim to prove of its own claim when the court deems it so appropriate. That's what happened here, isn't it? I see my time has expired. If I could answer that question. Go ahead and answer the question, though. Don't worry about your time. They intervened personally and filed directly instead of going through the probation officer, which is what 3664 contemplates. Mandates? Sorry? Does it mandate? It provides the... D4 is superfluous? No, Your Honor. Okay. That's enough. Thanks. Counsel, thank you very much for your presentation. The case just argued will be submitted for decision. And we'll hear argument in the next case, which is United States v. Gagnon.
judges: O'scannlain, Trott, Bybee